UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMIAH F. McMILLON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17 CV 311 ACL |
| | ) | |
| MICHELE BUCKNER,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Jeremiah F. McMillon for a writ of habeas corpus under 28 U.S.C. § 2254.

### I. Procedural History

McMillon is currently incarcerated at the South Central Correctional Center in Licking, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis County, Missouri. (Doc. 13-8 at 111.) After a bench trial, McMillon was convicted of two counts of forcible sodomy (Counts 1 and 8), one count of forcible rape (Count 7), one count of attempted forcible rape (Count 2), one count of kidnapping (Count 6), four counts of robbery in the first degree (Counts 3, 4, 5, and 9); and one count of stealing a motor vehicle (Count 10). *Id.* On April 19, 2012, the court sentenced McMillon as a persistent offender to terms of life imprisonment for Counts 1 through 9, with the sentences for Counts 1 through 3 to run consecutively, and for Counts 4 through 9 to run concurrently with those for Counts 1 through 3

---

[1]After the filing of the Petition, McMillon was transferred to the South Central Correctional Center ("SCCC") in Licking, Missouri. Michele Buckner, Warden of SCCC, is therefore substituted as the party respondent in this case. *See* Fed. R. Civ. P. 25(d).

1

and to each other. *Id.* The court also sentenced McMillon to a term of fifteen years' imprisonment for Count 10, to run consecutively to the sentences for Counts 1 through 9. *Id.*

In his direct appeal of his convictions, McMillon raised two points. First, he argued that the trial court erred in refusing to rescind its order appointing the public defender as "standby counsel" and forcing him to proceed to trial with standby counsel over his objection, thereby violating his state and federal constitutional rights. (Doc. 13-1.) In his second point on appeal, he argued that the trial court abused its discretion in denying his motion to sever Counts 6 through 10, which involved the victim L.P., from Counts 1 through 5, which involved different victims. *Id.* The Missouri Court of Appeals for the Eastern District affirmed the judgment of the trial court on May 6, 2014. (Doc. 13-4.)

On September 10, 2014, McMillon filed a *pro se* motion for post-conviction relief. (Doc. 13-13 at 8-16.) After the appointment of counsel, McMillon filed an amended motion and request for evidentiary hearing, in which he raised the following claims: (1) pre-trial counsel was ineffective for failing to challenge the out-of-court identification of McMullin by victim L.P.; (2) appellate counsel was ineffective in failing to raise trial court error in overruling his motion to suppress the identification; and (3) his right to due process and a fair trial were violated by prosecutorial misconduct. *Id.* at 24-49. The motion court denied McMillon's amended motion and his request for an evidentiary hearing. *Id.* at 72-83.

In his appeal from the denial of post-conviction relief, McMillon raised his two ineffective assistance of counsel claims that he raised in the post-conviction proceedings. (Doc. 13-9.) On June 21, 2016, the Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 13-11.)

McMillon filed the instant Petition on January 30, 2017. (Doc. 1.) In his first ground for relief, McMillon argues that the trial court erred when it refused to reconsider its order

2

appointing standby counsel over his objection, thereby violation his Sixth Amendment right to self-representation. *Id.* at 5. In his second ground for relief, McMillon argues that the trial court erred when it denied his motion to suppress an identification, in violation of the Missouri Constitution. *Id.* at 6.

Respondent filed a Response to Order to Show Cause, in which she argues that Ground Two is procedurally defaulted , and both of McMillon's claims fail on their merits. (Doc. 13.)

McMillon filed a Reply, in which he provides further argument in support of Ground One. (Doc. 18.)

## II. Standard of Review

A federal court=s power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Collins*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under

3

the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court=s] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### III. McMillon's Claims

**1. Ground One**

McMillon first argues that the trial court erred when it refused to reconsider its order appointing standby counsel over his objection after he had waived his right to counsel and insisted on proceeding to trial *pro se*. He contends that the appointment of standby counsel violated his Sixth Amendment right to self-representation.

McMillon was initially represented by counsel from the Missouri State Public Defender's office ("MSPD"), who filed motions to suppress evidence and identification that the trial court overruled. (Doc. 13-8 at 17-19.) Prior to trial, the court granted McMillon's Request to Proceed without Assistance of Counsel, and ordered counsel from the MSPD to act as standby counsel to assist him if requested "before, during, and after the trial." *Id.* at 51. The MSPD filed a motion to rescind the trial court's order appointing the MSPD as standby counsel for McMillon, arguing that such an appointment violated McMillon's Sixth Amendment right to self-representation. *Id.* at 20. The court denied the motion after holding a hearing. *Id.* at 1. The court directed that standby counsel sit at counsel table with McMillon and be available for consultation if requested, but that McMillon conduct "all aspects of the trial." *Id.*

4

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). The Supreme Court, however, has held that a court can appoint stand-by or advisory counsel to assist a defendant who wishes to represent himself at trial without violating the defendant's Sixth Amendment right to self-representation. *See Martinez,* 528 U.S. at 162*; McKaskle v. Wiggins,* 465 U.S. 168, 176-77 (1984); *Faretta,* 422 U.S. at 834, n. 46. A criminal defendant's right to appear *pro se* does not absolutely bar standby counsel's unsolicited participation at a trial or at a hearing. *McKaskle,* 465 U.S. at 176.

In determining whether a defendant has been afforded his or her right to self-representation, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177. The Supreme Court noted that "the objectives underlying the right to proceed *pro se* may be undermined by unsolicited and excessively intrusive participation by standby counsel." *Id.* The Sixth Amendment right to self-representation thus "must impose some limits on the extent of standby counsel's unsolicited participation." *Id.* The following limitations are thus placed on advisory or standby counsel:

> First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded.

*Id.* at 178. "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.* The Supreme Court in *McKaskle* noted that "participation by standby counsel outside the presence of the jury engages only the first of these two limitations." *Id.* at 179.

5

In his direct appeal of his convictions, McMillon argued that the trial court erred in refusing to rescind its order appointing the MSPD as standby counsel and forcing him to proceed to trial with standby counsel over his objection.

The Missouri Court of Appeals discussed the standards set out in *Faretta* and *McKaskle*. (Doc. 13-4 at 4-5.) The court then held as follows:

> The present case was a bench trial, so the only limitation on uninvited participation by standby counsel is the control over the defendant's case. From our review of the record, after standby counsel turned Defendant's file over to Defendant, apparently on February 24, 2012, Defendant fully controlled all of his case. Defendant made and argued his own motions. Prior to Defendant's election to waive a jury trial, he participated in the voir dire and jury selection. Standby counsel did nothing. During the actual bench trial Defendant questioned the witnesses and made his own objections The trial court was scrupulous in directing matters to Defendant for his response. The only action of note by standby counsel was to deny to the trial court that she signed an affidavit that Defendant submitted to the trial court during the trial Standby counsel raised no objections, questioned no witnesses, and made no motions. Defendant's *Faretta* rights clearly were vindicated in this case, as Defendant had absolute control over his defense.

*Id.* at 6.

The State court's determination was neither contrary to nor an unreasonable application of clearly established Federal law. As the court noted, McMillon's case was tried before a judge rather than a jury, so the appearance of control over his case was not at issue. The court's finding that McMillon had complete control over his case is supported by the record. McMillon made his own argument and submitted his own motions. (Respt's Ex. M at 5-35.) He also participated in voir dire prior to waiving his right to a jury trial. *Id.* at 42-187. Standby counsel's only involvement during the trial was to deny that she had signed an affidavit that McMillon submitted to the court. *Id.* at 581. The court properly applied *Faretta* and *McKaskle* and found McMillon's constitutional right to self-representation was not violated.

Accordingly, Ground One is denied.

**2.	Ground Two**

In his second ground for relief, McMillon alleges that the trial court erred when it denied his motion to suppress an identification, thereby violating his rights under Article I of the Missouri Constitution. Specifically, he contends that none of the other members of the lineup matched the victim's description of the attacker, in that they were taller than the victim's description.

McMillon did not raise this claim in his direct appeal or in his motion for post-conviction relief. In Missouri, "habeas corpus is not a substitute for appeal or post-conviction proceedings." *State ex rel. Simmons v. White,* 866 S.W.2d 443, 446 (Mo. banc 1993). Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *See Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011).

McMillon fails to demonstrate cause and prejudice for his failure to raise this claim in the State court proceedings, and does not contend he is actually innocent. Thus, the claim raised in Ground Two is procedurally defaulted.

McMillon's claim is also non-cognizable. Under 28 U.S.C. § 2254(a), a district court may only entertain a petition for writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." In other words, grounds that do not state a denial of a constitutional issue are not cognizable in a federal habeas petition. *See e.g., Gee v. Groose,* 110 F.3d 1346, 1351-52 (8th Cir. 1997). Because McMillon's claim only alleges a violation of the Missouri Constitution, it is not cognizable in this action.

Finally, McMillon's claim lacks merit, as the evidence presented at the hearing on the motion to suppress identification reveals that although all the individuals in the lineup were not the same height, they appeared similar in height and build. (Doc. 13-13 at 56.) According to what appear to be McMillon's own handwritten estimates of the other subjects' heights, four of the subjects were between five feet, six inches and five feet, eight inches tall. *Id*. The victim described her assailant as five feet, six inches, medium build. Respt's Ex. N at 8. The officer who requested the lineup, testified that the individuals in the lineup appeared similar in height and build, and that they had similar skin tone and facial features. *Id*. at 39.

Accordingly, Ground Two is denied.

## IV. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserved further proceedings. *See Cox*, 133 F.3d at 569. In this case, McMillon has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

Dated this 31st day of March, 2020.

    s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE